# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| GLENN FULLER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____ ) | CIVIL ACTION<br><br>No. 10-2037-JWL |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding the administrative law judge (ALJ) erred in evaluating the medical opinions, the court ORDERS that the decision is REVERSED, and that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

## I.     Background

Plaintiff applied for DIB and SSI on October 26, 2004, alleging disability since April 7, 2004. (R. 15C, 65-67).[1] The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge (ALJ). (R. 15C, 29-34, 37-43). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ William G. Horne on January 9, 2008. (R. 15C, 812). At the hearing, testimony was taken from Plaintiff, from a medical expert, from a vocational expert, and from Plaintiff's wife. (R. 15C, 812-73). On January 23, 2008, ALJ Horne issued a decision finding Plaintiff is not disabled within the meaning of the Act, and denying his applications. (R. 15-15O).

Specifically, the ALJ found that Plaintiff has not performed substantial gainful activity since his alleged onset date; and that he has numerous severe impairments including coronary artery disease, status post angioplasty and coronary bypass surgery, degenerative disc disease, shoulder strain, depressive disorder, pain disorder associated with both psychological factors and a general medical condition, anxiety disorder, and somatoform disorder; but that his impairments do not meet or equal the severity of any impairment listed in the Listing of Impairments. (R. 15E-15K). He found that Plaintiff has the residual functional capacity (RFC) for a range of sedentary work in jobs requiring:

---

[1]The record does not contain an application for SSI, but the "Notice of Disapproved Claims" and "Reconsideration Notice of Disapproved Claims" include notice of denial of DIB and SSI claims. (R. 29-34, 37-41). Moreover, the "Application for Disability Insurance Benefits" in the record is dated November 23, not October 26, 2004. (R. 65-67). Nonetheless, Plaintiff does not contest these facts as found by the ALJ.

no fine dexterity with the right hand; no repetitive overhead lifting or reaching; no lifting from floor level; only simple, repetitive work that is as stress free as possible; only occasional bending; no crawling, kneeling, or crouching; only limited contact with the public and coworkers; no extremes of hot or cold; and controlled humidity. (R. 15K).

In discussing Plaintiff's severe impairments and his RFC, the ALJ summarized the record evidence and the testimony at the hearing, and specifically considered treatment records, examination reports, or opinions from at least fourteen named physicians, psychologists, or other health care providers. (R. 15F-15M). The ALJ identified medical opinions from seven physicians or psychologists and accorded or denied specific weight to each of those opinions. (R. 15H-15J, 15M). He also cited treatment records from three health care providers who did not provide an opinion regarding Plaintiff's capacity for work or whether he is disabled, but who indicated that Plaintiff was uncooperative with treatment or had delayed treatment, and that Plaintiff exhibited self-limiting behaviors, submaximal effort, excessive pain behaviors, or symptom magnification. (R. 15G). The ALJ found Plaintiff's allegations of symptoms "not entirely credible." (15M).

The ALJ found that Plaintiff is unable to perform any past relevant work, but that considering his age, education, work experience, and RFC there are a significant number of other jobs in the economy that Plaintiff can perform. (R. 15M-15N). Therefore, he concluded Plaintiff is not disabled within the meaning of the Act, and denied the applications. (R. 15N-15O). Plaintiff requested, but the Appeals Council denied, review of the ALJ's decision. (R. 7-10, 14, 806-11). Therefore, the ALJ's decision is the final

decision of the Commissioner and Plaintiff now seeks judicial review of that decision. (R. 7); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).

## II. Legal Standard

The court's jurisdiction and review are guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1051-52 (10th Cir. 2009) (citing 42 U.S.C. § 405(g)); see also, 42 U.S.C. § 1383(c)(3) (final decision in an SSI case is also "subject to judicial review as provided in section 405(g) of this title"). Section 405(g) of the Act provides that, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other

evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. §§ 404.1520, 416.920 (2007); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Id. (quoting Lax, 489 F.3d at 1084.)

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment, and whether the severity of his impairment(s) meets or equals the severity of

5

any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).

Williams, 844 F.2d at 750-51.  If claimant's impairment(s) does not meet or equal a listed

impairment, the Commissioner assesses RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).

This assessment is used at both step four and step five of the sequential process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--

whether claimant can perform his past relevant work, and whether, when considering

vocational factors of age, education, and work experience, claimant is able to perform

other work in the economy.  Wilson, 602 F.3d at 1139 (citing Lax, 489 F.3d at 1084).  In

steps one through four the burden is on claimant to prove a disability that prevents

performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006);

accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at

751 n.2.  At step five, the burden shifts to the Commissioner to show jobs in the economy

within Plaintiff's capacity.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims error, arguing that the ALJ ignored certain medical opinions, and

that he was "cherry picking" among the medical opinions, accepting portions of the

opinions which were supportive of his decision and rejecting those portions of the

opinions which were contrary to the decision.  The Commissioner argues that substantial

evidence supports the ALJ's evaluation of the medical opinions.  He argues that the

medical sources' notations regarding symptom magnification led the ALJ to find

Plaintiff's allegations not credible, and that Plaintiff does not dispute the credibility

finding.  He argues that the ALJ need not adopt any one medical opinion, but must

determine RFC based on the record as a whole. He argues this is what the ALJ did, that he acknowledge several doctor's opinions that Plaintiff was "disabled," but "found that the record as a whole, including the abundant evidence of symptom magnification outweighed the doctors' opinions." (Comm'r Br. 7) (citing (R. 15H-15M)). He then points to substantial evidence in the record which, in his view, supports the ALJ's evaluation of the medical opinions.

The court finds no support for Plaintiff's assertion that the ALJ ignored certain medical opinions, but agrees with Plaintiff that the ALJ did not properly weigh the medical opinions. Although the court acknowledges that it is the ALJ's responsibility to weigh the medical opinions and the other evidence of record and assess Plaintiff's RFC based upon the substantial evidence in the record as a whole, the court finds that in the circumstances of this case, the ALJ did not support the weight accorded each medical opinion with substantial evidence in the record as a whole, but rather substituted his lay opinion for that of the medical sources, determining portions of the medical opinions were "proper" and could be accepted, but that other portions of the medical opinions were not "proper" and could not be accepted. The court will address the errors alleged in the order of their presentation in Plaintiff's brief.

## III.    Whether the ALJ Ignored Certain Medical Opinions

In his first allegation that the ALJ ignored a medical opinion, Plaintiff claims the ALJ ignored a GAF[2] score of 45 assigned by Dr. Din on July 20, 2007. (Pl. Br. 7). He supports this claim by noting that the ALJ did not mention Dr. Din's GAF score in the decision. Id. The Commissioner acknowledges that the ALJ did not mention Dr. Din's evaluation, but argues that an ALJ is not required to discuss every piece of evidence, that the Commissioner has specifically declined to endorse GAF scores for use in Social Security and SSI disability evaluation, that the ALJ discussed other GAF scores in the record, and that Plaintiff has shown no harm resulting from the error alleged. (Comm'r Br. 11-13). The court finds no error.

As the Commissioner argues, an ALJ is not required to discuss every piece of evidence. The record must demonstrate that the ALJ considered all of the evidence, but he is not required to discuss every piece of relevant evidence. Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996); accord, Barnett v. Apfel, 231 F.3d 687, 689 (10th Cir.

_____

[2]A Global Assessment of Functioning, or GAF, score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 32 (4th ed. text revision 2000). The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). Id. at 34. GAF is a classification system providing objective evidence of a degree of mental impairment. Birnell v. Apfel, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing Schmidt v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).
　　A GAF score in the range from 41 to 50 indicates "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." DSM-IV-TR, at 34 (emphasis in original).

2000) ("The ALJ is charged with carefully <u>considering</u> all the relevant evidence.")
(emphasis added). "[I]n addition to discussing the evidence supporting his decision, the
ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as
significantly probative evidence he rejects." <u>Clifton</u>, 79 F.3d at 1010.

Plaintiff makes no attempt to show that the GAF score assessed by Dr. Din was
either uncontroverted evidence the ALJ chose not to rely upon, or significantly probative
evidence the ALJ rejected. The court finds, first of all, that Dr. Din's GAF score was not
uncontroverted. For, as the Commissioner's brief suggests, the ALJ mentioned GAF
scores of 60 and 85 assigned by Dr. Pro, and scores of 35 and 50 assigned by Dr. Keenan.
More importantly, the court finds that the GAF score assessed by Dr. Din is not
significantly probative in the circumstances of this case, and the ALJ did not err in failing
to mention it in the decision.

Dr. Din performed a single examination of Plaintiff on July 20, 2007, but provided
no report explaining either his opinion or the results of his examination. (R. 474-81). Dr.
Din's treatment notes from that visit note Plaintiff's reports to the physician and his staff
in an "intake evaluation," and consist primarily of Plaintiff's reported history of the
present illness, past psychological history, medical history, and social history, all as
reported by Plaintiff. (R. 475-80). The only true "opinion" reflected in the notes at issue
is in the section titled "Impression/Diagnosis," and reflects that Plaintiff was diagnosed
with mood disorder and personality disorder and was assessed a current GAF score of 45.
(R. 475). There is no explanation from Dr. Din as to the significance of the GAF score or

what that score represents in terms of limitations in Plaintiff's capacity for work on a regular and continuing basis. As footnote 2 above indicates, the GAF score assessed by Dr. Din might reflect serious <u>symptoms</u>, or might reflect serious impairment in either <u>social</u>, <u>occupational</u>, or <u>school functioning</u>. Lacking an explanation from Dr. Din, neither the ALJ nor this court has any basis to assess the significance of the GAF score as it might relate to Plaintiff's capacity for work. It was not error to fail to discuss the score. Any discussion on the part of the ALJ of Plaintiff's capacity for work as reflected in the GAF score assessed by Dr. Din would have been mere speculation.

Plaintiff next claims the ALJ ignored and failed to comment on the statement of the medical expert (ME), Dr. Kravitz, that Plaintiff is "just not going to function appropriately in a work environment." (Pl. Br. 8) (quoting (R. 858)). Plaintiff's claim is without basis in the record. Contrary to Plaintiff's claim, the ALJ specifically noted in the decision that, "Dr. Kravitz testified that, in his opinion, the claimant would not be able to function appropriately in a work environment." (R. 15M). Although, as discussed later in this opinion, the ALJ erred in his evaluation of Dr. Kravitz's opinion, the error was not in ignoring or failing to discuss this testimony identified by Plaintiff. The court does not find that the ALJ ignored any of the evidence alleged by Plaintiff.

## IV.    Whether the ALJ Erred in Evaluating the Medical Opinions

Plaintiff next argues that the ALJ "cherry picked" from the medical opinions giving substantial weight to those portions that are favorable to his decision while rejecting those portions which do not agree with his view. He argues that the ALJ failed

to consider Plaintiff's mental and physical impairments together, despite the medical opinions which noted that when Plaintiff's physical and mental impairments are considered together Plaintiff is unable to work. He argues that the ALJ stated Dr. Keenan's opinion was entitled to substantial weight, but did not really accord the opinion such weight. The Commissioner argues that the ALJ properly weighed the medical opinions, and points to record evidence which in his view supports the ALJ's weighing. The court finds that the ALJ improperly picked and chose portions of the medical opinions favorable to his decision, failed to consider Plaintiff's physical and mental impairments in combination, and failed to properly consider the opinions of Dr. Keenan and Dr. Kravitz. Therefore, the court finds that remand is necessary for the Commissioner to properly weigh the medical opinions.

The Commissioner has defined "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Medical opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. 20 C.F.R. §§ 404.1527(d), 416.927(d); Social Security Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2010). Those factors are: (1) length of treatment relationship and

11

frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

A physician who has treated a patient frequently over an extended period of time is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of examining sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). Moreover, an ALJ may not pick and choose from a medical report, using only those parts favorable to his decision. Robinson, 366 F.3d at 1083. Nor may he "pick and choose among medical reports, using portions of evidence favorable to

his position while ignoring other evidence." <u>Hardman v. Barnhart</u>, 362 F.3d 676, 681

(10th Cir. 2004) (emphasis added).

The ALJ discussed medical opinions from seven sources, and stated the weight he

accorded each:

> On December 21, 2004, an independent medical examination of the
> claimant was performed by P. Brent Koprivica, M.D., an occupational
> medicine specialist, in connection with the claimant's workers
> compensation case (Exhibit 7F). Upon examination and testing, Dr.
> Koprivica noted symptom magnification and a "severe psychological
> overlay in his pain presentation suggestive of somatization." Dr. Koprivica
> noted that the claimant had positive Waddell signs for over reaction, and
> stated that the claimant's subjective complaints suggested a "non-
> physiologic neurologic examination in the lower extremities." Dr.
> Koprivica concluded that the claimant's physical impairments would not
> result in significant loss of task ability, and the undersigned gives
> substantial weight to this opinion from Dr. Koprivica since it is consistent
> with the objective medical records in evidence and the other significant
> evidence of record. Dr. Koprivica also noted another opinion that ". . . as
> he presents, and assuming validity to his beliefs, I would consider him to be
> permanently and totally disabled." The undersigned gives little weight to
> this opinion because the claimant's beliefs are not valid due to his
> consistent history of exaggerating his symptoms. In addition, this opinion
> from Dr. Koprivica is not a medical opinion and is on an issue reserved to
> the Commissioner of the Social Security Administration (SSR 96-5p).

> As for his mental health medical records, an independent psychiatric
> evaluation of the claimant was done on January 24, 2005 by Dr. John D.
> Pro, M.D. in connection with the claimant's workers compensation case
> (Exhibit 21F). Upon mental status examination and testing, Dr. Pro listed
> the following mental diagnostic impressions: chronic pain syndrome with
> medical and psychological factors; history of alcohol and marijuana abuse,
> currently in remission; and personality disorder with paranoid, impatient,
> explosive and impulsive traits. Dr. Pro rated the claimant's current Global
> Assessment of Functioning (GAF) at 60 and his highest GAF within the
> previous year at 85 (Exhibit 21F, p. 4). Dr. Pro noted that the claimant
> exhibited "significant pain behaviors" during this evaluations similar to
> what were noted by Drs. Koprivica and Hendler. Dr. Pro noted his opinion

that from "the psychological standpoint of his chronic pain alone, he probably could do some low-stress work" (Exhibit 21F, p. 5), which is consistent with his GAF estimates for the claimant. The undersigned gives substantial weight to this opinion from Dr. Pro as it is consistent with the other substantial evidence in the record, specifically including the opinions of the other physicians of record noted herein. However, Dr. Pro also stated an opinion that when the claimant's psychological impairment is combined with his physical impairment, "it is my opinion that at this time, he cannot work a 40-hour workweek with the usual expectations and demands," and that "he is currently totally and permanently disabled" (Exhibit 21F, p. 5). The undersigned gives little weight to these last two opinions from Dr. Pro. Dr. Pro's opinion that the claimant cannot work a 40-hour workweek does not take into account the claimant's exaggerated symptoms, even though Dr. Pro admitted that he agreed with "virtually everyone who has examined him and felt that he has symptom magnification."

A consultative psychological examination of the claimant was done by Jason E. Neufeld, Ph.D. on February 3, 2005 (Exhibit 8F). . . . Upon examination and testing, Dr. Neufeld noted a conclusion that the claimant was "experiencing psychological difficulties related to the constraints and consequences of changes in his physical condition" (Exhibit 8F, p. 4). Dr. Neufeld noted the following mental diagnoses: pain disorder associated with both psychological factors and a general medical condition; and depressive disorder, not otherwise specified. Dr. Neufeld did not note his estimate of the claimant's Global Assessment of Functioning (GAF), but stated his opinion that "the claimant's current psychological problems would preclude his ability to perform Simple Unskilled Work." Dr. Neufeld was quick to add that the claimant "would likely experience improvement with regard to his psychological symptoms were any existing physical distress to likewise improve," and that "psychological intervention would also lead to improvements in social and occupational functioning if successful."

The undersigned gives very little weight to Dr. Neufeld's opinion that the claimant's "current psychological problems would preclude his ability to perform Simple Unskilled Work" for the following reasons. Dr. Neufeld's opinion is not a medical opinion, it is a vocational opinion on an issue reserved to the Commissioner (SSR 96-5p). Dr. Neufeld's opinion is also very speculative on its face, as it is conditional upon the claimant's physical complaints and upon whether the claimant were to receive psychological treatment. This opinion from Dr. Neufeld is not given significant weight by

both State agency psychological consultants who have reviewed this case, Elizabeth Bergmann-Harms, Ph.D., and C. Warrender, M.D. (Exhibit 11F). The undersigned agrees with the rationale stated by Dr. Bergmann-Harms as to why she does not give Dr. Neufeld's opinion significant weight (Exhibit 11F, pp. 15-16). Finally, Dr. Neufeld's opinion is not supported by the other substantial evidence in the record.

On February 16, 2006 and February 24, 2006, the claimant underwent a psychological testing evaluation administered by Kathleen J. Keenan, Ph.D. in conjunction with his workers compensation case (Exhibit 20F). Dr. Keenan's evaluation was very thorough, as demonstrated by her 14-page report. Upon completion of the testing and evaluation, Dr. Keenan listed the following psychological diagnoses for the claimant: pain disorder associated with psychological factors; anxiety disorder, not otherwise specified; and schizotypal personality disorder. Dr. Keenan noted that according to her reading of the claimant's medical records, the claimant sustained "very little actual physical damage from his work comp injury, other than bruises and muscle strains" (Exhibit 20F, p. 10). Dr. Keenan then summarized the medical records upon which she based her assessment. Dr. Keenan further noted that the claimant's "apparent marked emotional distress that he exhibits over and above what he reportedly was experiencing prior to his injury is, in my opinion, self-induced and due primarily to his lack of motivation and his need for secondary gain" (Exhibit 20F, p. 10). Dr. Keenan stated that "the fact that this patient has exaggerated his physical distress is well documented," noting that "virtually every physician and therapist who has treated this patient has noted that his pain complaints were exaggerated and out of proportion to medical findings" (Exhibit 20F, p. 10). It had also been noted that the claimant "reported patterns of pain that were not medically possible or probable." Dr. Keenan further noted that the results of her evaluation "clearly indicate that the patient is exaggerating his emotional distress, as well" (Exhibit 20F, p. 11). Dr. Keenan stated that "everything about the claimant's MMPI-2 profile fits the classic 'fake bad' profile pattern." It has been Dr. Keenan's experience that "exaggeration of symptoms of this nature and to this degree is likely the result of a combination of characterological and secondary gain factors" (Exhibit 20F, p. 11). Although Dr. Keenan rated the claimant's current GAF at 35 and his highest GAF in the past year at 50 (Exhibit 20F, p. 9), she conceded that her diagnoses were "difficult to diagnose accurately because of his lack of insight and his exaggeration of all symptoms" (Exhibit 20F, p. 12). Other than her GAF estimated scores, the undersigned gives substantial weight to Dr. Keenan's opinions, for they are consistent

with the other significant evidence in the record, specifically the opinions of the other physicians of record noted above.

\* \* \*

The medical expert, Dr. Kravitz,[3] testified that in his opinion, the severity of the claimant's mental impairments do not meet or medically equaled any listed mental impairment. The undersigned gives substantial weight to Dr. Kravitz's opinion on this issue, as it is uncontroverted by any other medical evidence or medical opinion in the record. The undersigned also gives substantial weight to the opinions of the State agency medical and psychological consultants[4] on this issue, who determined that the claimant's impairments do not meet or medically equal any listed impairment (Exhibits lA, 11F).

(R. 15H-15J).

As for the opinion evidence, the undersigned has already discussed the medical source opinions above. In addition, the medical expert, Dr. Kravitz testified that it is hard to tell from the evidence in the record whether the claimant is mentally capable of working a job involving only simple, repetitive work, because opinions from examining sources conflict on that issue. Dr. Kravitz testified that, in his opinion, the claimant would not be able to function appropriately in a work environment, but stated a caveat to that opinion by noting that the claimant is not in any mental health treatment. Accordingly, Dr. Kravitz stated, "Having said that, he's not in any treatment, so I have to ask myself, how impairing can this all be if he's not in any treatment." The undersigned agrees with Dr. Kravitz's observation about how impairing can the claimant's mental symptoms be if he is not in any mental health treatment, and gives this observation/opinion significant weight.

(R. 15M).

----

[3]Dr. Kravitz is a clinical psychologist whose qualification to testify as an expert in this case is without question since the ALJ sought a stipulation, and Plaintiff's counsel stipulated regarding Dr. Kravitz's qualifications. (R. 853).

[4]The consultants named in the exhibits cited are: Dr. Bergman-Harms, Ph.D.; Dr. Stockwell, M.D.; and Dr. Warrender, MD.

16

Dr. Koprivica was a medical doctor practicing occupational medicine who performed an independent medical examination of Plaintiff, but who did not perform a mental status examination. (R. 402-12). In making his examination, he suspected a psychological component to Plaintiff's pain presentation, and his opinions were based upon both physical and psychological considerations. (R. 409-12). Dr. Koprivica found that "Mr. Fuller has severe psychological overlay in his pain presentation suggestive of somatization." (R. 411). Dr. Koprivica concluded that Plaintiff "should be evaluated from a psychological/psychiatric standpoint," and that if "the mental health care expert places validity on [Plaintiff's] pain presentation," he did not believe Plaintiff is employable. (R. 411-12). Based upon these conclusions, Dr. Koprivica stated his opinion, "I do not believe [Plaintiff's] physical impairments would result in significant loss of task ability. However, realistically, as [Plaintiff] presents, and assuming validity to his beliefs, I would consider him to be permanently and totally disabled." (R. 412). Thus, Dr. Kopravica opined that Plaintiff's physical impairments alone are not disabling, but that if Plaintiff's pain presentation is valid based upon psychological/psychiatric considerations, it would be his opinion that Plaintiff is disabled based upon the combination of physical and psychological impairments. The ALJ gave "substantial weight" to Dr. Koprivica's opinion that Plaintiff's physical impairments would not result in significant loss of task ability, but gave "little weight" to his opinion that "assuming validity to his beliefs," Plaintiff is permanently and totally disabled.

Although Dr. Koprivica is not a mental health care expert, and admitted as much in his report, he opined that if Plaintiff's pain presentation is valid from a psychiatric/psychological perspective, Plaintiff is disabled. Dr. Koprivica linked his two opinions, and the ALJ may not accept one without the other--at least, not without specific reasons supported by record evidence. The ALJ gave two reasons to reject the linked opinion: (1) Plaintiff's beliefs are not valid because he consistently exaggerated his symptoms, and (2) the opinion is on an issue reserved to the Commissioner and is not a medical opinion. (R. 15H) (citing SSR 96-5p).

The ALJ was correct to note that an opinion of total disability is an issue reserved to the Commissioner. However, such an opinion may not be disregarded, and "the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 124 (Supp. 2010). Here, the ALJ did not follow this standard, and his second reason to discount Dr. Kopravica's linked opinion is error. As to the first reason, although the record repeatedly reveals Plaintiff exaggerated his symptoms, and engaged in symptom magnification, Dr. Kopravica admitted as much, and in fact noted that Plaintiff "is positive under Waddell's criteria for overreaction." (R. 410). Moreover, at Dr. Kopravica's suggestion, Plaintiff was referred to Dr. Pro for psychiatric evaluation to determine if Plaintiff's belief's are valid. (R. 15H, 503-08).

Dr. Pro noted that "virtually everyone who has examined [Plaintiff] has felt that he has symptom magnification." (R. 507). Dr. Pro diagnosed Plaintiff with "chronic pain

syndrome with medical and psychological factors," and noted that his diagnosis implies that Plaintiff's suffering and pain behavior "go beyond what is ordinarily encapsulated by the degree of tissue damage the person has," and that "there are psychological factors which are driving the pain experience and causing the amplification or magnification of the pain." Id. He identified the factors causing the amplification or magnification of pain as (1) childhood physical abuse, (2) a recent heart attack, and (3) a low-grade personality disorder. Id. Dr. Pro stated, "I do not see any evidence of malingering." Id. Dr. Pro concluded with his opinions regarding Plaintiff's ability to work:

> From the psychological standpoint of his chronic pain alone, he probably could do some low-stress work. In fact, he says that he has tried to apply for several jobs. However, when his psychological impairment is combined with his physical impairment, it is my opinion that at this time, he cannot work a 40-hour workweek with the usual expectations and demands. In my opinion, he is currently totally and permanently disabled.

Id.

As did Dr. Kopravica, Dr. Pro linked his opinions regarding (1) ability to work based upon psychological impairments and (2) ability to work when both physical and psychological impairments are considered together. As he did with Dr. Kopravica's opinion, the ALJ again divided Dr. Pro's opinion and accorded "substantial weight" to the opinion that Plaintiff could probably do some low-stress work if only his psychological impairment is considered, but "little weight" to the linked opinion that when his physical and psychological impairments are considered together, Plaintiff cannot work a 40-hour workweek and is totally and permanently disabled. (R. 15H). Once again, the ALJ

accorded substantial weight to the opinion with which he agreed and little weight to the opinion with which he disagreed. The ALJ discounted the opinion of disability because it "is not a medical opinion at all," and it is on an issue reserved to the Commissioner, and because of Plaintiff's exaggerated symptoms.

As the court noted above, SSR 96-5p requires that a physician's opinion regarding disability (or any issue reserved to the Commissioner) may not be given controlling weight or special significance, but it must be weighed just as are all medical opinions. SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 124 (Supp. 2010). Further, the ALJ erred in stating that Dr. Pro's opinion "is not a medical opinion at all." As the court noted above, "medical opinions" are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An opinion that Plaintiff cannot work a 40-hour workweek with the usual expectations and demands, and that he is "totally and permanently disabled" reflects judgments about the severity of Plaintiff's impairments, about the prognosis for his condition, and about what Plaintiff can still do despite his impairments. Moreover, Dr. Pro is a physician, a psychiatrist, and an acceptable medical source. Therefore, his opinion regarding disability and ability to work a 40-hour week is, by definition, a medical opinion. SSR. 96-5p does not change that fact. In fact, although the ruling recognizes such opinions as "administrative findings that

may determine whether an individual is disabled," and states that they will not be given controlling weight or special significance, it nonetheless requires that they "must not be disregarded." West's Soc. Sec. Reporting Serv. Rulings 127 (Supp 2010). SSR 96-5p notes that:

> opinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.

Id. at 124.

The ALJ's consideration of Plaintiff's pain behaviors such as exaggeration and symptom magnification in respect to the medical opinions also suggests a misunderstanding as to what is represented by such findings by a physician or psychologist. The ALJ found that Plaintiff has severe mental impairments of depressive disorder, pain disorder associated with both psychological factors and a general medical condition, anxiety disorder, and somatoform disorder. (R. 15E). In summarizing the diagnostic features of somatization disorder, the Diagnostic and Statistical Manual of Mental Disorders states, "The essential feature of Somatization Disorder is a pattern of recurring, multiple, clinically significant somatic complaints." DSM-IV-TR, at 486. It explains that, "The multiple somatic complaints cannot be fully explained by any known general medical condition or the direct effects of a substance." Id. It concludes, "Finally,

the unexplained symptoms in Somatization Disorder are <u>not intentionally feigned or produced</u> (as in Factitious Disorder or <u>Malingering</u>)." <u>Id.</u> (emphases added).

The Manual also states, "The essential feature of Pain Disorder is pain that is the predominant focus of the clinical presentation and is of sufficient severity to warrant clinical attention." <u>Id.</u> at 498. It notes that, "Psychological factors are judged to play a significant role in the onset, severity, exacerbation, or maintenance of the pain" and "The pain is <u>not intentionally produced or feigned</u> as in Factitious Disorder or <u>Malingering</u>. <u>Id.</u> (emphases added). In "Pain Disorder Associated with Both Psychological Factors and a General Medical Condition," "both psychological factors and a general medical condition are judged to have important roles in the onset, severity, exacerbation, or maintenance of the pain," and "The symptom or deficit is <u>not intentionally produced or feigned</u> (as in Factitious Disorder or <u>Malingering</u>)." <u>Id.</u> at 503 (emphases added).

Dr. Kopravica acknowledged Plaintiff's pain behaviors, including exaggeration and symptom magnification, but in finding a "severe psychological overlay in his pain presentation suggestive of somatization," (R. 411), he was implicitly stating that the pain behaviors were not intentionally produced, not feigned, and did not amount to malingering. Dr. Pro also acknowledged that Plaintiff had symptom magnification, but he specifically stated that he did "not see any evidence of malingering." This finding was also <u>implicit</u> in his finding that Plaintiff "is suffering from chronic pain syndrome with medical and psychological factors." (R. 507). Dr. Pro identified the factors that drive Plaintiff's pain magnification. <u>Id.</u> Both doctors acknowledged and considered that

Plaintiff was engaging in symptom magnification and pain exaggeration, but neither found malingering or that the behaviors were intentionally produced or feigned. Therefore, the ALJ's statement that he gave "little weight" to portions of the doctors' opinions because of the symptom magnification and pain exaggeration ignores the fact that the doctors specifically considered those pain behaviors. In the circumstances, this amounts to no more than "picking and choosing" only those parts of the reports which are favorable to his determination. In according substantial weight to the first portion of the doctors' opinions, but only little weight to the linked second portion of the opinions, the ALJ was substituting his medical judgment for that of the medical source, and that is something he may not do. Winfrey v. Chater, 92 F.3d 1017, 1022-23 (10th Cir. 1996) (ALJ erred in substituting his medical judgment for that of a medical professional); see also, McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.") (citation omitted) (emphasis in McGoffin).

Dr. Neufeld performed a psychological examination for the state disability agency, which included psychological testing and a mental status examination, and he prepared a report of his findings. (R. 413-17). Dr. Neufeld diagnosed Plaintiff with "Pain Disorder Associated with Both Psychological Factors and a General Medical Condition," and "Depressive Disorder Not Otherwise Specified," and summarized his opinion:

The claimant's history and clinical presentation indicate that he is experiencing psychological difficulties related to the constraints and consequences of changes in his physical condition. For example, he appears to be experiencing a significant mood disturbance in the area of depression. Test results reveal that the way in which the claimant copes with his psychological distress exacerbates his experience of chronic pain and physical dysfunction. It is likely that his psychological difficulties impair the claimant's ability to achieve and sustain an adequate level of functioning in an occupational setting. In addition to personal difficulties, limitations on social/interpersonal functioning may be indicated by his current psychological deficits. While an opinion is not offered with regard to the level of impairment that stems from physical difficulties, it is the opinion of the examiner that the claimant's current psychological problems would preclude his ability to perform Simple Unskilled Work. The claimant would likely experience improvement with regard to his psychological symptoms were any existing physical distress to likewise improve. Psychological intervention would also lead to improvements in social and occupational functioning if successful. Given the claimant's test profile, however, his prognosis with regard to psychological interventions is guarded. Finally, treatment with psychotropic medication should be considered.

(R. 416-17).

Dr. Neufeld's opinion is similar to those of Dr. Kopravica and Dr. Pro. As with his treatment of those opinions, the ALJ gave Dr. Neufeld's opinion "very little weight" because it was not a medical opinion but a vocational opinion on an issue reserved to the Commissioner. Again, this is error. As discussed above regarding the opinions of Drs Kopravica and Dr. Pro, Dr. Neufeld's opinion is a medical opinion. Even more than those opinions, Dr. Neufeld did not opine that Plaintiff is disabled. Rather, he opined that Plaintiff is precluded from performing simple, unskilled work. This is clearly a medical opinion, may not be ignored, and must be weighed with all of the record evidence.

The ALJ stated that he discounted Dr. Neufeld's opinion partly because it was "very speculative on its face, as it is conditional upon the claimant's physical complaints and upon whether the claimant were to receive psychological treatment." (15I). Again, the ALJ erred. The doctor's opinion was stated directly (Plaintiff's condition precludes simple unskilled work) and was not made conditional upon any basis. However, the doctor did note that improvement in Plaintiff's condition was conditioned upon two factors: (1) improvement in physical distress, or (2) successful psychological intervention. Given the nature of Pain Disorder Associated with Both Psychological Factors and a General Medical Condition as discussed above, the doctor's conditional statement is not surprising. Because the perceived pain is attributable to both a physical condition and psychological factors, improvement in either factor could produce improvement in the pain. Moreover, Dr. Neufeld's opinion is consistent with the opinions of both Dr. Koprivica and Dr. Pro.

Finally, the ALJ discounted Dr. Neufeld's opinion for the reasons given by Dr. Bergmann-Harms. (R. 15I). The court's review reveals that Dr. Bergmann-Harms discounted the opinion because "it does not appear to be consistent with the claimant self-reported ADL's [(activities of daily living)], which include ability to perform both simple and detailed tasks in his home." (R. 451). While there may be some merit in this reason, neither Dr. Bergmann-Harms nor the ALJ explained how Plaintiff's ADL's are inconsistent with Plaintiff's physical and mental impairments combining in the form of a

Pain Disorder and precluding <u>work for a 40-hour week</u>. This reason by itself is insufficient to justify according "very little weight" to Dr. Neufeld's opinion.

As the ALJ noted, Dr. Keenan, a psychologist, performed a psychological testing evaluation of Plaintiff in conjunction with Plaintiff's workers compensation case. (R. 489-502). Dr. Keenan noted that the purpose of her evaluation was to determine if Plaintiff is psychologically impaired; if so, what is the nature of the impairment; and what part of the impairment is a result of Plaintiff's workers compensation injury on April 7, 2004. (R. 489). The ALJ found that Dr. Keenan's fourteen-page report was very thorough. (R. 15I). That finding is supported by substantial evidence. Dr. Keenan related Plaintiff's presenting complaint of extreme pain, and summarized the history of his treatment. (R. 489-93). Dr. Keenan summarized treatment by Dr. Dennis, Physician Assistant Volp, Dr. Zahorsky, Dr. Hendler, Physical Therapist Stone, and Dr. Walton. (R. 489-92). She summarized the examinations and reports of Dr. Kopravica and Dr. Pro, Plaintiff's psychosocial history, Dr. Keenan's clinical evaluation of Plaintiff's mental status and behavior and the results of the psychological testing she had performed. (R. 493-97). Dr. Keenan diagnosed Plaintiff with "Pain Disorder Associated With Psychological Factors," "Anxiety Disorder," and "Schizotypal Personality Disorder," and assessed a current GAF of 35, and a Highest GAF in the past year of 50. (R. 497).

Dr. Keenan provided her summary and conclusions. (R. 498-501). She stated:

> I would agree with other evaluators that this patient appears to be totally disabled. I disagree with them, however, in that it is my opinion that the majority of this patient's disability was pre-existing [before the April 7,

26

> 2004 work injury].  His observed/reported level of disability is due to a
> combination of his actual degree of impairment plus his lack of motivation
> and his need for secondary gain.  The patient's actual level of
> mental/emotional impairment is due to a combination of his underlying
> personality disorder plus the impact of his physical impairments.

(R. 498).  As the ALJ noted, Dr. Keenan understood that Plaintiff sustained very little

physical damage from his workers comp injury on April 7, 2004, and she concluded that

most of his physical impairments (heart disease, degenerative changes in the spine, and so

forth) were pre-existing.  Id.  She stated:

> It is my clinical opinion, however, that the major physical contributor to his
> psychological distress, was, in fact, his heart condition rather than his work
> comp injury.  The apparent marked emotional distress that he exhibits over
> and above what he reportedly was experiencing prior to his injury is, in my
> opinion, self-induced and due primarily to his lack of motivation and his
> need for secondary gain.

Id.  Dr. Keenan explained that Plaintiff's exaggeration of his pain is well-documented,

and psychological testing revealed he exaggerated his emotional distress also.  Id., at 498-

99 (Noting, "Everything about the patient's MMPI-2 profile fits the classic 'fake bad'

profile pattern.").  She opined that this exaggeration was a result of characterological and

secondary gain factors, she explained how these factors predispose Plaintiff to exaggerate

his symptoms, and she supported her explanation with Plaintiff's history and with her

evaluation and testing of Plaintiff.  Id., at 499-500.  Dr. Keenan explained why she

diagnosed "Pain Disorder Associated with Psychological Factors," a disorder in which

> pain in one or more anatomical sites is the chief presenting complaint.
> Psychological factors are judged to have the major role in the onset,
> severity, exacerbation, and/or maintenance of this pain.  Anyone who has
> interviewed Mr. Fuller would likely be able to validate that pain in

numerous anatomical locations is, indeed. his chief presenting complaint. Even though he knew he was coming to me for a psychological evaluation related to a claim of psychological disability, when I asked the patient what his primary problem was, he answered, "I am in a shit load of pain from the top of my head to my ass ..."  The fact that there are no objective medical findings (related to his work comp injury), and the fact that his pain complaints have clearly escalated in response to stress (e.g., after he was fired from his job at ITS), it seems clear that psychological factors (or possibly the combination of psychological factors and preexisting physical problems) are driving his complaints.  What the diagnosis of "Pain Disorder" means is that the person is experiencing their physical symptoms in a distorted way due to the personality factors that they brought with them to the injury/pain experience.  This appears to be the case with this patient.

(R. 500).

The ALJ stated he gave "substantial weight" to Dr. Keenan's opinions, other than her GAF scores, because those opinions "are consistent with the other significant evidence in the record, specifically the opinions of the other physician's of record noted above."  (R. 15J).  The ALJ's discussion of Dr. Keenan's report reflects the same misunderstanding of the significance of Dr. Keenan's diagnosis of "Pain Disorder Associated with Psychological Factors" as is reflected in his discussion of the opinions of Dr. Kopravica, Dr. Pro, and Dr. Neufeld.  Although Dr. Keenan did not explicitly state the finding, implicit in her diagnosis is a finding that Plaintiff is not intentionally feigning or producing his symptoms, and is not malingering.  Therefore, although she discussed his exaggerated pain behaviors, and his test results which fit "the classic 'fake bad' profile pattern," and that his marked emotional distress is "self-induced and due primarily to his lack of motivation and his need for secondary gain," she did not suggest that he was malingering or that his symptoms were not "real" to him.

Rather, she agreed with the other evaluators that Plaintiff is totally disabled, and this agreement is reflected in the GAF score of 35 she assigned, which indicates "**Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM-IV-TR, at 34. Her only disagreement with Dr. Kopravica and Dr. Pro was in finding that the condition predated Plaintiff's injury on April 7, 2004, and did not result from that injury. She stated that "the major physical contributor to his psychological distress, was, in fact, his heart condition rather than his work comp injury." (R. 498). She concluded that only 20% of Plaintiff's total psychological impairment was attributable to his work comp injury on April 7, 2004. (R. 501). In other words, Dr. Keenan opined that Plaintiff is currently disabled; but that most of Plaintiff's disability results from his Schizotypal Personality Disorder and the psychological impact of his pre-existing condition, including heart disease and his 2003 heart attack and bypass surgery; and that the workers compensation injury was merely "the last straw." She concluded her analysis by noting, "The primary source of this patient's psychological impairment is his pre-existing personality disorder plus his pre-existing life experiences and medical problems." (R. 501).

As Plaintiff argues, the ALJ stated he gave substantial weight to Dr. Keenan's opinion, but he did not do so in reality. Had he done so, he almost certainly would have

found Plaintiff disabled as a result of his physical and mental impairments combined.  He merely chose sentences and phrases from Dr. Keenan's report which supported his findings but he did not truly analyze or consider those portions of the report which detract from his decision.  This is reversible error.

The ALJ accorded "substantial weight" to the step three opinions (that Plaintiff's condition does not meet or medically equal the severity of any Listed Impairment) stated by Dr. Kravitz, the medical expert, and by the state agency medical and psychological consultants.  (R. 15J).  As the ALJ stated, Plaintiff has not alleged that his condition meets or equals a Listed Impairment, and he does not contest the step three finding, or the ALJ's determination to give these opinions substantial weight in that regard.

The ALJ noted the medical expert testified that claimant would not be able to function appropriately in a work environment, but that he "stated a caveat to that opinion by noting that the claimant is not in any mental health treatment."  The ALJ concluded, "The undersigned agrees with Dr. Kravitz's observation about how impairing can the claimant's mental symptoms be if he is not in any mental health treatment, and [the ALJ] gives this observation/opinion significant weight." (R. 15M).

The court finds the ALJ erred in evaluating Dr. Kravitz's testimony.  As relevant here, the hearing transcript reveals this discussion between the ALJ and Dr. Kravitz:

Q      And, Doctor, just from what you've reviewed, from a psychological point-of-view, can this individual work a simple, routine, repetitive job?

A      Well, that's where I come back.  That he should be able to do it and I have evidence that he would not be able to do it.  And I would say based on

the report of Dr. Keenan, I would lean – because it's such a thorough report
of his personality and his self-absorption and he would be a victim, that he's
just not going to function appropriately in a work environment. Having
said that, he's not in any treatment. So I have to ask myself how impairing
can this all be if he's not in any treatment?

(R. 858).

Dr. Kravitz's testimony is not a model of clarity or of unequivocal certainty.
However, as the ALJ acknowledged, Dr. Kravitz opined that Plaintiff would not be able
to function appropriately in a work environment. If Dr. Kravitz's opinion is given
substantial weight, Plaintiff will be found disabled. The ALJ did not give the opinion
substantial weight, but instead focused on Dr. Kravitz's expression of uncertainty because
Plaintiff is not in any treatment, and he gave that "observation/opinion significant
weight." In doing so, the ALJ effectively rejected the opinion actually stated by Dr.
Kravitz (Plaintiff cannot function appropriately in a work environment) without giving
any reason for doing so except to assert that Dr. Kravitz stated a caveat to the opinion
(that Plaintiff is not in treatment). The effect of doing so is once again to pick and choose
the portion of the testimony favorable to his decision and reject that portion with which
he disagreed.

This error is magnified by the fact that the law requires an ALJ to apply a
particular analysis anytime he relies on a failure to pursue treatment as a basis to find a
claimant is not disabled. Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993)
(citing Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987)); see also, 20 C.F.R.
§§ 404.1530, 416.930 (failure to follow prescribed treatment without justifiable excuse

31

will result in denial or termination of benefits).  Before relying on such a failure to pursue treatment, "the ALJ should consider '(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse.'"  Id. (quoting Frey, 816 F.2d at 517).  The ALJ did not engage in any of this analysis, he merely accorded substantial weight to the doubt raised by Dr. Kravitz because Plaintiff is not in any mental health treatment.

As the court's discussion above amply illustrates, the ALJ did not properly weigh the medical opinions in the case record.  He did not recognize the significance of the medical sources' diagnoses of impairments which he accepted as "severe" within the meaning of the Act.  He separately weighed the opinions regarding physical and mental impairments without regarding the combined effect of Plaintiff's impairments.  He improperly picked and chose portions of the opinions supportive of his decision while disregarding those portions contrary to his decision.  And, he relied upon Plaintiff's failure to pursue treatment without applying the four-part test from Frey.  Remand is necessary for the Commissioner to properly evaluate the medical opinions.

**IT IS THEREFORE ORDERED** that the decision be REVERSED, and judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Dated this 21st day of January 2011, at Kansas City, Kansas.

s:/ John W. Lungstrum          
**John W. Lungstrum**
**United States District Judge**